IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY TORAN          *

   Plaintiff          *

      v          *          Civil Action No. DKC-16-3731

OFFICER LEPLY and          *
STATE OF MARYLAND
                             *

   Defendants
                            ***

**MEMORANDUM OPINION**

Plaintiff Gregory Toran, a prisoner incarcerated at North Branch Correctional Institution (NBCI), filed a civil rights complaint raising both constitutional and state tort claims. ECF No. 1. Defendants responded to the complaint with a motion to dismiss or for summary judgment. ECF No. 14. Toran has not filed a response in opposition although he was advised of his right to do so (ECF No. 15) and was granted additional time (ECF No. 17). For the reasons stated below, Defendants' motion, construed as a motion for summary judgment,[1] will be granted with respect to Toran's constitutional claims and supplemental jurisdiction will be declined with regard to the state tort claims raised.

**Background**

<u>Plaintiff's Allegations</u>

On November 20, 2015, Toran was confined to a cell located in the disciplinary segregation unit of NBCI. ECF No. 1-1 at p. 3. Toran states in the unverified complaint that he

---

[1] Defendants' dispositive submission will be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

had a "verbal confrontation with Officer Lepley[2] who slammed his hand in the feed up slot of his cell door and started calling him Niggas." *Id.* Toran does not clarify whether the incident involving the feed up slot occurred before, during, or as a result of the verbal confrontation, nor does he explain what the verbal confrontation concerned.

Toran claims that when his hand was slammed inside of the slot door, he yelled out for help and asked for medical assistance, that Lepley refused his request, but states that he was "eventually" seen by "the medical department" and was treated for three scratches to his left wrist and forearm. ECF No. 1-1 at pp. 3 - 4.

As relief, Toran seeks compensatory and punitive damages totaling one million dollars. *Id.* at p. 4.

### Defendants' Response

Toran's claim that Lepley assaulted him was the subject of an investigation conducted by the Internal Investigation Division (IID) for the Department of Public Safety and Correctional Services (DPSCS). The IID concluded that there was no evidence to support Toran's claim he was assaulted. ECF No. 14-3 at p. 14.

In his declaration under oath, Lepley states that on November 20, 2015, at approximately 3:45 p.m., he was in Toran's housing unit where he was opening the slots in each cell door to allow for delivery of meal trays to the inmates in each cell, a process known as "feed-up." ECF No. 14-4. When Lepley opened the slot on Toran's cell door to permit his food tray to be delivered, Toran pushed his arm through the slot in an attempt to prevent it from being closed. *Id.* Despite Toran's action, Lepley was able to get the door half-way closed without touching

---

[2] The full and correct spelling of this Defendant's name is Officer David Lepley. *See* ECF No. 14. The Clerk will be directed to correct the docket to reflect the full and correct spelling of his name.

2

Toran's arm. *Id*. Lepley then walked away from Toran's cell and continued with his job on the rest of the tier. Prior to walking away, Lepley did not observe any injuries to Toran's arm. *Id*.

Lepley returned to Toran's cell to collect the meal tray and it was then that Toran accused Lepley of assaulting him. *Id*. Toran showed Lepley two small scratches on his left arm, claiming they were the result of the alleged assault. *Id*. Lepley then informed the housing unit Sergeant about Toran's allegations. *Id*. Lepley denies assaulting Toran and denies ever making any racist remarks. *Id*.

At approximately 8:53 p.m. on the same day of the alleged assault, Toran was seen by Dawn Hawk, R.N. ECF No. 14-3 at pp. 30 – 31. At that time, Toran claimed that his arm had been caught in the slot on his door and that it had been cut several times; he voiced no other complaints. *Id*. Hawk noted three scratches on the underside of Toran's left wrist and forearm that were scabbed over with no active bleeding, swelling, redness, or bruising. *Id*. The medical attention provided consisted of cleaning the areas noted. *Id*.

Defendants submitted a copy of the surveillance camera footage from Toran's housing unit tier during the time the incident is alleged to have occurred. ECF No. 14-6. The camera angle together with the poor quality of the picture renders the video of little to no evidentiary value.

**Standard of Review**

Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Exhaustion of Administrative Remedies

Defendants raise the affirmative defense of non-exhaustion and assert the complaint must be dismissed pursuant to 42 U.S.C. § 1997e. Inmates are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a), *see also Ross v. Blake*, _U.S._, 136 S.Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). The statute provides in pertinent part that:

4

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)

This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. *Ross*, 136 S.Ct. at 1857, *Jones v. Bock,* 549 U.S. 199, 219 (2007). A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856, citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"). The purpose of exhaustion is to: 1) allow a prison to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones,* 549 U.S. at 219. An inmate's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones,* 549 U.S. at 211–12, 216; *Moore*, 517 F.3d at 725.

In *Ross,* the Supreme Court of the United States identified three kinds of circumstances in which an administrative remedy is unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to

aggrieved inmates." 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process. *See* Code of Md. Regs. ("COMAR"), tit. 12 §07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 §07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 §07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office. *See* Md. Corr. Servs., Code Ann. §§10-206, 10-210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B.

Complaints are reviewed preliminarily by the Inmate Grievance Office ("IGO"). *See* Md. Corr. Servs., Code Ann. §10-207; COMAR, tit. 12 §07.01.06A. If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Corr. Servs., Code Ann. §10-207(b)(1); *see* COMAR, tit. 12 §07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. Md. Corr. Servs., Code Ann. §10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Md. Cts. & Jud. Proc., Code Ann. §10-208(c); COMAR tit. 12

§07.01.07-.08. The conduct of such hearings is governed by statute. *See* Md. Corr. Servs., Code Ann. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* Md. Corr. Servs., Code Ann. §10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* Md. Corr. Servs., Code Ann. §10-210. An inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary

7

in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

## Analysis

As noted, Toran has not opposed the motion filed by Defendants. Thus, the assertion that he failed to exhaust available administrative remedies is undisputed and, that factor alone, warrants dismissal of the complaint without prejudice. However, the court notes the following with respect to exhaustion of administrative remedies in this case. Toran's ARP was dismissed because the issue was under investigation by the IID. ECF No. 14-3 at p. 22. Indeed, the rubber-stamp response states that "[t]his issue is being investigated by IID . . . . Since this case shall be investigated by II[D], no further action shall be taken within the ARP Process." *Id*.

The applicable regulation states that "[a] managing official may procedurally dismiss an ARP request that . . . [a]ddresses an issue under investigation by the Department's <u>Internal Investigative Division (IID)</u>." ECF No. 14-9 at p. 8; Executive Directive Number: OPS.185.0002.05.K.3(e) (emphasis in original). Further, if the inmate appeals an ARP that was procedurally dismissed on that basis, the regulations provide that the appeal may be procedurally dismissed. ECF No. 14-9 at p. 10; Executive Directive Number: OPS.185.0002.05.M.2. There is no indication in either the regulations or in the response provided to Toran that further efforts to address his ARP claim would resume after the IID investigation was terminated, or that an appeal of his ARP would not simply be dismissed. In light of these considerations, this court does not find dismissal without prejudice on the basis that Toran did not exhaust administrative remedies legally sound or well-reasoned. Rather, the merits of Toran's claims will be addressed herein.

Lepley's denial that an assault even took place and that he made a racist remark[3] is also undisputed. While a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes when the allegations contained therein are based on personal knowledge, *see Davis v. Zahradnick*, 600 F.2d 458, 459–60 (4th Cir.1979), the instant complaint is unverified. According to Lepley's declaration under oath, he closed the feed-up slot in Toran's door halfway without touching Toran's arm and observed no injuries. ECF No. 14-4. In the IID report, which is a verified business record (*see* ECF No. 14-3 at p.1), it is documented that Toran alleged "the food service worker was distributing food trays without wearing his hair net." *Id*. at p. 9. Toran also claimed that "it took a couple of hours before they took me to medical" so the injury he sustained consisted of dried up blood and was scabbed over. *Id*. Toran told the investigator that Lepley never managed to secure the slot in his door. *Id*.

Contrasted with Toran's version of the events is the interview with another inmate who Toran claimed witnessed the incident, Michael Labron Ames. Ames claimed that Toran tried to grab his food tray and Lepley closed the slot on his hand. *Id*. at p. 10. He further claimed that Toran's hand was caught in the slot for four hours. *Id*. Toran's claim that the "injury" was partially healed and that Lepley never managed to secure the slot in his door contradict Ames' version of events. Thus, there are no indicia of credibility regarding Toran's claims as reported by the IID investigator.

Lepley's declaration under oath denying the assault occurred is supported by the objective medical evidence indicating that the only "injury" noted were three small scratches to Toran's wrist and forearm that were scabbed over. ECF No. 14-3 at pp. 30 - 31, *see also* p. 27 &

---

[3] Taking the allegations that Lepley did use a racial epithet as true, the claim fails to state a constitutional violation. Verbal abuse, without more, does not state a constitutional claim. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979). Moreover, "not all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (1995).

28 (photographs). Even if those minor injuries were caused when Lepley closed the door halfway, that action is not a violation of the Eighth Amendment. Causing an inadvertent, minor injury is not cruel and unusual punishment. Defendant Lepley is entitled to summary judgment in his favor.

The claim against the State of Maryland is barred by the Eleventh Amendment. Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. With respect to Toran's pendent state tort claim, it will be dismissed without prejudice. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

A separate Order follows.

June 20, 2017　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　DEBORAH K. CHASANOW
　　　　　　　　　　　　　　　　　　　United States District Judge